**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Tony L. Ellison

    v.                                      Civil No. 10-cv-351-SM

State of New Hampshire et al.[1]


**REPORT AND RECOMMENDATION**


Before the Court is Tony Ellison's complaint (doc. no. 1) alleging that defendants have violated his civil rights in the collection of restitution he was ordered to pay as part of the sentence for his incarcerating offenses. Because Ellison is a prisoner proceeding pro se,[2] the matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted and whether it invokes the subject matter jurisdiction of this

---

[1]In addition to the State of New Hampshire, Ellison has named the following individuals as defendants to this action: Deborah Nelson of the New Hampshire Department of Corrections' Exeter Field Office; Assistant Rockingham County Attorney Brad Bolton; Mark C. Thompson, Director of Administration for the New Hampshire Victims' Assistance Commission ("VAC"); Bette Jane Riordan, VAC Coordinator; Assistant Attorney General Anthony Blenkinsop; New Hampshire Superior Court Judges Patricia Coffey and John Lewis; and New Hampshire Supreme Court Justices John Broderick, Linda Dalianis, James Duggan, Gary Hicks, and Carol Ann Conboy.

[2]Ellison objects to being referred to as a "pro se" litigant and requests that he be henceforth referred to as a litigant "sui juris." I decline to so refer to plaintiff.

Court.  See 28 U.S.C. § 1915A; United States District Court for

the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard of Review

Under this Court's local rules, when an incarcerated person

commences an action pro se and in forma pauperis, the Magistrate

Judge conducts a preliminary review.  LR 4.3(d)(2).  In

conducting the preliminary review, the Court construes all of

the factual assertions in the pro se pleadings liberally,

however inartfully pleaded.  See Erickson v. Pardus, 551 U.S.

89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429

U.S. 97, 106 (1976), to construe pro se pleadings liberally in

favor of the pro se party).  "The policy behind affording pro se

plaintiffs liberal interpretation is that if they present

sufficient facts, the court may intuit the correct cause of

action, even if it was imperfectly pled."  Ahmed v. Rosenblatt,

118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United

States, 540 U.S. 375, 381 (2003) (courts may construe pro se

pleadings to avoid inappropriately stringent rules and

unnecessary dismissals).  This review ensures that pro se

pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon

which relief could be granted, the Court must consider whether

the complaint, construed liberally, Erickson, 551 U.S. at 94,

"contain[s] sufficient factual matter, accepted as true, to

Case 1:10-cv-00351-SM   Document 8   Filed 11/18/10   Page 3 of 13

'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949

(2009) (citation omitted).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Id.  Inferences reasonably drawn

from the plaintiff's factual allegations must be accepted as

true, but the Court is not bound to credit legal conclusions,

labels, or naked assertions, "devoid of 'further factual

enhancement.'"  Id.  (citation omitted).  Determining if a

complaint sufficiently states such a claim for relief is a

"context-specific task that requires the reviewing court to draw

on its judicial experience and common sense."  Id. at 1950

(citation omitted).

### Background

Tony Ellison is serving a 30-60 year sentence for sexual

offenses against his three minor children.  Part of his

sentence, imposed in 2001, is an order that he pay the out-of-

pocket and uninsured costs of counseling for his children, up to

a maximum of $10,000 per child.  Restitution was made payable

through the New Hampshire Department of Corrections ("DOC").

Four years into Ellison's sentence, the DOC began deducting

money from his inmate account to be paid toward his restitution

obligation.  After the deductions began, Ellison requested

3

documentation from the DOC proving the costs incurred for which

he was being held responsible.  On February 28, 2006, Ellison

filed a motion in the trial court to compel the DOC to provide

him with its records regarding his restitution obligation,

including a comprehensive accounting of the costs of the

victims' counseling.  The New Hampshire Victims' Assistance

Commission ("VAC") had apparently provided cash for certain out-

of pocket expenses for the victims' counseling, for which

Ellison was ultimately responsible.  Ellison sought

documentation and an accounting of those expenditures from the

VAC as well.

On March 26, 2007, Superior Court Judge Patricia Coffey

ordered the DOC to provide restitution records to Ellison.

Deborah Nelson, the DOC Officer responsible for managing

Ellison's restitution collection and payments, provided Ellison

with records the DOC received from the victims' mother.  No

documentation was provided by the VAC.  In addition to the

counseling costs for each of the three victims, counseling costs

and the cost of lost wages for the victims' mother were also

included in the accounting.

Ellison successfully petitioned the Court to direct that

the victims' mother's counseling and lost wages expenses not be

paid by him, as those expenses were not part of the initial

sentencing order.  On June 5, 2006, Judge Coffey ordered the DOC

to provide a comprehensive accounting to Ellison for the victims' expenses.  On June 14, 2006, the DOC provided Ellison with receipts and dates of service received from the victims' mother.  The VAC, in turn, provided a letter with amounts spent, but without documentation or other accounting of the expenses it incurred on behalf of the victims.  Based on that information, Judge Coffey determined that Ellison was responsible only for restitution of the counseling costs of his victims and not their mother's counseling or other expenses. Further, Judge Coffey determined that the victims had incurred, at that time, out-of-pocket costs of $8322.60, plus a 17% administrative fee.  Ellison's obligation that had been accrued at that time, therefore, was $9737.33.  Ellison's objection to Judge Coffey's Order and his motion to reconsider that Order were denied.

Shortly thereafter, the DOC stopped deducting restitution payments from Ellison's inmate account.  Because the deductions stopped, Ellison did not appeal the Superior Court order. Eventually, the DOC again began to deduct restitution payments from Ellison's inmate account.

On September 2, 2008, Ellison again petitioned the Superior Court to determine the total amount of his restitution obligation that had accrued.  A hearing on his motion was scheduled for January 29, 2009.  At that time, Superior Court

Judge John Lewis ordered that Ellison be provided with documentation of the costs of restitution within thirty days. On April 1, 2009, the Court issued an order directing that the documents, which Ellison had not yet received, be submitted for in camera review.  Ellison requested to be present at the in camera review but his request was denied.  On June 12, 2009, after conducting the in camera review, Judge Lewis sealed the records and denied Ellison's motion for documentation of the restitution amounts charged.  Judge Lewis kept the existing restitution order in place.  Ellison's motion to reconsider was denied.  Ellison filed a notice of appeal in the New Hampshire Supreme Court which was declined.  Two motions to reconsider the declination were also denied.

## The Claims

Ellison raises the following claims for relief in this Court[3]:

1.   Defendants violated Ellison's rights to due process, a fair trial, and equal protection, as protected by the Fifth, Sixth, and Fourteenth Amendments, and state law, by failing to provide Ellison with records and specific accounting for restitution amounts for which he is liable;

---

[3]The claims, as identified herein, will be considered to be the claims raised in the complaint for all purposes.  If Ellison disagrees with the identification of the claims herein, he must do so by properly objecting to this Report and Recommendation or by properly filing a motion to amend his complaint.

2.   Defendants intentionally conspired with one another to commit fraud against Ellison by failing to present proof of Ellison's restitution obligation, in violation of Ellison's rights under federal and state law; and

3.   Defendants committed theft when they took, or caused to be taken, money out of Ellison's inmate account for restitution, without Ellison's consent and without proper documentation of Ellison's restitution obligation, in violation of Ellison's rights under federal and state law.

### Discussion

I.   Rooker-Feldman Doctrine

"The Rooker-Feldman doctrine precludes the 'losing party in state court [from filing] suit in federal court after the state proceedings [have] ended, complaining of an injury caused by the state court judgment – and seeking review and rejection of that judgment."  Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 63 (1st Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)).  The Rooker-Feldman doctrine -- named for a line of cases derived from D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fid. Trust Co., 263 U.S. 413 (1923) -- "precludes [federal district] courts from exercising subject matter jurisdiction where the issues presented in the case are 'inextricably intertwined' with questions previously adjudicated

by a state court, such that the federal district court would be
. . . reviewing a state court decision for error." Mills v.
Harmon Law Offices, P.C., 344 F.3d 42, 44 (1st Cir. 2003)
(footnote and citations omitted); see also Hill v. Town of
Conway, 193 F.3d 33, 39 (1st Cir. 1999). As explained below,
Rooker-Feldman precludes this court from exercising jurisdiction
over Ellison's assertion that his rights have been violated in
the state courts.

A.    State Proceedings Have Ended

Rooker-Feldman applies when the losing party in state court
files suit in federal court after the state proceedings have
ended. See Federacion de Maestros v. Junta de Relaciones del
Trabajo, 410 F.3d 17, 21 (1st Cir. 2005) (citations omitted). A
court will find that underlying state court proceedings have
ended if the highest state court in which review is available
has affirmed the judgment below and nothing is left to be
resolved, rendering the judgment susceptible to certiorari
review under 28 U.S.C. § 1257. See Federacion, 410 F.3d at 24-
25. Here, Ellison states that he fully litigated this matter in
Superior Court and, upon losing, filed a notice of appeal which
was declined. Accordingly, the Superior Court's order denying
Ellison relief is a final judgment in this matter. The
complaint leaves no doubt that the state court matter is
concluded.

B.    Claims Are Inextricably Intertwined

Rooker-Feldman precludes an exercise of jurisdiction over
certain federal claims that are "inextricably intertwined" with
issues decided by the state courts.  Hill, 193 F.3d at 39.
Claims are "inextricably intertwined" if "'the federal claim
succeeds only to the extent that the state court wrongly decided
the issues before it.'"  Id. (quoting Pennzoil Co. v. Texaco,
Inc., 481 U.S. 1, 23, 25 (1987) (Marshall, J., concurring)).

A litigant may not seek to reverse a final state court
judgment simply by recasting his complaint in the form of a
civil rights action.  See Fortune v. Mulherrin, 533 F.2d 21, 22
(1st Cir. 1976); cf. Miller v. Nichols, 586 F.3d 53, 59 (1st
Cir. 2009) (Rooker-Feldman bars jurisdiction where parties who
lost in state court seek review and rejection of state court
judgment on legal grounds not actually litigated in state
court).  The proper recourse for a litigant in the state courts
who is unhappy with the decisions of those courts is to pursue
his appeal through the state appellate process, and then to the
United States Supreme Court.  See Miller, 586 F.3d at 59 ("Only
the Supreme Court of the United States may invalidate state
court civil judgments.").

Here, Ellison seeks to relitigate his complaints
surrounding the documentation of his restitution obligations,
and states that the denial of relief in the state courts worked

a violation of his right to equal protection and "fundamental fairness." This is no more than Ellison's effort to recast the matter already litigated as a civil rights action. This Court could not decide this matter in Ellison's favor, or grant him relief, without specifically invalidating the actions of the state courts. This is precisely the course of action precluded by the Rooker-Feldman doctrine. See Lance v. Dennis, 546 U.S. 459, 464 (2006); see also Miller, 586 F.3d at 59. Accordingly, I recommend that Ellison's claim that his civil rights have been violated in the litigation of his restitution matter in the state courts be dismissed pursuant to the Rooker-Feldman doctrine.

## II.   Fraud and Theft Claims

Ellison complains that defendants have, individually and in conspiracy with one another, committed fraud and theft against him. To the extent Ellison intends to assert a civil cause of action regarding these actions, such claims are barred by the Rooker-Feldman doctrine, as explained above, and should be dismissed.

To the extent that Ellison intends to assert that the defendants named here have committed criminal acts, and that he has a right to have these individuals prosecuted criminally, his claims fare no better. There is no federal constitutional right to have criminal wrongdoers brought to justice, and therefore,

there is no private right of action under § 1983 for the failure

to prosecute a particular crime.  See Leeke v. Timmerman, 454

U.S. 83, 87 (1981); Nieves-Ramos v. Gonzalez-De-Rodriguez, 737

F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R.S. v. Richard

D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a

judicially cognizable interest in the prosecution or

nonprosecution of another")).  Ellison cannot, therefore,

maintain any action seeking the criminal investigation or

prosecution of the defendants.  I recommend, therefore, that

Ellison's theft and fraud claims against defendants be

dismissed.

III. Property Claim

     Ellison claims that he was improperly deprived of property

-- money from his inmate account -- and has thereby suffered

financial harm.  It is not apparent that this matter was

litigated in, or is necessarily inextricably intertwined with,

the claims Ellison previously litigated in the state courts.  To

the extent that this claim is not precluded by Rooker-Feldman,

therefore, I will consider it.

     Claims alleging the theft, damage, loss or other

misappropriation of property are not actionable under 42 U.S.C.

§ 1983 where, as here, the state has an adequate post-

deprivation remedy available.  See Hudson v. Palmer, 468 U.S.

517, 533 (1984); Lowe v. Scott, 959 F.2d 323, 340 (1st Cir.

1992); see also N.H. Rev. Stat. Ann. 541-B:9(II) & (IV), and

541-B:14 (1997) (providing post-deprivation means of recouping

property loss attributable to State).  If Ellison believes that

money was improperly removed from his inmate account, he has an

adequate post-deprivation state law remedy available to him to

address the matter.  Accordingly, I recommend that Ellison's

property claim be dismissed as not cognizable under § 1983.

IV.   State Law Claims

Ellison asserts that the claims he raises violate his

rights under state as well as federal law.  Under 28 U.S.C.

§ 1367(a), the district court has supplemental jurisdiction over

state law claims that arise from the same nucleus of operative

facts as the federal claims raised in the action.  See Roche v.

John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir.

1996).  If the court dismisses all claims over which it has

original jurisdiction, or if the state law claims would

substantially predominate over the remaining federal claims, the

court may decline to exercise its supplemental jurisdiction over

those state law claims.  See 28 U.S.C. § 1367(c).  If this

recommendation is approved, all of the asserted federal claims

in this action will be dismissed.  The state law claims raised,

therefore, should also be dismissed.

Conclusion

For the foregoing reasons, I recommend dismissal of this matter in its entirety.  Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Fed. R. Civ. P. 72(b)(2); Rodriguez-Mateo v. Fuentes-Agostini, 66 Fed. App'x. 212, 213 n.3 (1st Cir. 2003); Sunview Condo. Ass'n v. Flexel Intern., Ltd., 116 F.3d 962, 964 (1st Cir. 1997).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  November 18, 2010

cc:  Tony L. Ellison, pro se

LBM:jba